**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SHENZHEN JINGHE TECHNOLOGY CO., LTD., | ) ) | |
| Plaintiff, | ) ) | Case No. 18-cv-5031 |
| v. | ) ) | Judge: Hon. Sara L. Ellis |
| DOES 1-166, DOES 167-169 | ) ) | Magistrate: Hon. Maria Valdez |
| Defendants. | ) ) ) | |

**AMENDED COMPLAINT**

Plaintiff Shenzhen Jinghe Technology Co., Ltd. ("Jinghe" or "Plaintiff") hereby brings the present action against Does 1-166 and Does 167-169 identified on Amended Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I.   JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28 U.S.C. 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois,

through at least the fully interactive, commercial Internet stores operating under the Online Marketplace Accounts identified in Amended Schedule A attached hereto (the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of Jinghe's trademark. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold counterfeit products using counterfeit versions of Jinghe's federally registered trademark to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Jinghe substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Jinghe to combat online counterfeiters who trade upon Jinghe's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products, using counterfeit versions of Jinghe's federally registered trademark COMWINN (the "Counterfeit COMWINN products") for LED Lighting Products. The Defendants create the Defendant Internet Stores and design them to appear to be selling genuine COMWINN products in the description, image or title of products, while in fact selling Counterfeit COMWINN Products to unknowing customers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit COMWINN Products offered for sale, establishing a logical relationship between them and suggesting that

Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Jinghe is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and protect unknowing consumers from purchasing Counterfeit COMWINN Products over the Internet. Jinghe has been and continues to be irreparably damaged through consumer confusion of its valuable trademark as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4. Plaintiff Shenzhen Jinghe Technology Co. Ltd., is a Chinese limited liability company with its principal place of business at No. 1, QianWan Rd., Qianhai ShenGang Cooperation Area, Shenzhen China. It started to ship goods to its US Storage since September 6, 2016 using Amazon FBA shipping service.

5. Jinghe was founded by YueZhong Li who established the company on August 25, 2015. Jinghe focuses its online business and gained a rapid growth on E-Commerce that covers major international markets including USA, UK, Germany, France, Spain and Italy through various sites of Amazon: www.amazon.com, www.amazon.co.uk, www.amazon.de, www.amazon.fr, www.amazon.es and www.amazon.it.

6. Jinghe's registered US trademark COMWINN (U.S. Reg. No. 5261169) has become a well-known brand in the Industry of Lighting and Lamps on Amazon for its top rank on

American and European sales. Some COMWINN Products won the BEST SELLER and Amazon's choice symbol. COMWINN Products' fine quality and excellent customer service contribute to its achievement as a popular brand across the whole sites of Amazon in LED lights and lamps of the same type. Jinghe also enjoys EU design patents for its COMWINN Products. COMWINN has formed a high degree of confidence and loyalty in customers' hearts thanks to its cost-effective product nature that brings daily life convenience to its global customers.

7. Jinghe has spent tremendous work, energy, time and financial resources on establishing COMWINN as a top LED Lighting brand on Amazon. It costs Jinghe multi-million dollars on developing and promoting all COMWINN Products. The cost of research and development at preliminary stage of each listed COMWINN LED Lighting Product alone exceeds USD 160,000, including but not limited to the costs of manual design, fees for establishing intellectual property rights, mode development, etc., not to mention other operational costs, including advertising fees, labor costs, production costs, storage costs, etc.

8. Jinghe incorporates the distinctive mark of COMWINN in the design of its various Jinghe products. For its first use in commerce, Jinghe owns common law trademark rights in COMWINN Trademark. Jinghe has also registered its trademark COMWINN with the United States Patent and Trademark Office. Jinghe uses its trademark COMWINN in connection with the marketing of its Jinghe Products.

9. The U.S. registration for the Jinghe Trademark COMWINN is valid, subsisting, in full force and effect. The COMWINN Trademark has been used by Jinghe exclusively and continuously and has never been abandoned. The registration for the

4

COMWINN Trademark constitutes *prima facie* evidence of its validity and of Jinghe's exclusive right to use the COMWINN Trademark pursuant to 15 U.S.C. § 1057 (b). True and correct copies of the United States Registration Certificates for the above-listed COMWINN Trademark is attached hereto as **Exhibit 1**.

10. The COMWINN Trademark is exclusive to Jinghe and is displayed extensively on Jinghe Products and in Jinghe's marketing and promotional materials. COMWINN Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as one of the most popular brand in the industry. Because of these and other factors, the COMWINN brand distinguished itself remarkably throughout online marketplace sales.

11. The COMWINN Trademark is distinctive when applied to the Jinghe Products, signifying to the purchaser that the products come from Jinghe and are manufactured to Jinghe's quality standards, which pass the strict tests of ISO (International Organization for Standardization). The COMWINN Trademark has achieved outstanding recognition on Amazon, which has only added to the inherent distinctiveness of the mark. As such, the goodwill associated with the COMWINN Trademark is of incalculable and inestimable value to Jinghe.

**The Defendants**

12. Defendants are individuals or business entities who, upon information and belief, reside in the United States, United Kingdom or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the

State of Illinois and this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit COMWINN products to consumers within the United States, including the State of Illinois by providing shipments of Counterfeit COMWINN Products and accepting orders and payments for Counterfeit COMWINN Products from Illinois residents.

13. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of the COMWINN Trademark in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Jinghe to learn Defendants' true identities and the exact interworking of their counterfeit network. If defendants provide additional credible information regarding their identities, Jinghe will take appropriate steps to amend the Complaint.

**IV. DEFENDANTS' UNLAWFUL CONDUCT**

14. The success of COMWINN brand has resulted in its significant counterfeiting. Consequently, Jinghe has regularly investigates online marketplace in proactive Internet sweeps and reported by consumers. Jinghe has recently identified numerous fully interactive marketplace listings on websites such as Amazon, eBay, and various UK websites

targeting the US consumers, etc. In spite of Jinghe's enforcement efforts, including urging online marketplaces to restrict infringing sellers from continuing selling counterfeiting COMWINN products and sending cease and desist letters to infringers, Defendants have persisted in listing, offering to sell or selling Counterfeit COMWINN Products. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

15. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized by online retailers, outlet stores, or wholesalers. Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, Payoneer and PayPal. The Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Jinghe has not licensed or authorized Defendants to use any of the COMWINN Trademark, and none of the Defendants are authorized retailers or wholesalers

of genuine COMWINN Products.

16. Many Defendants also deceive unknowing consumers by using the COMWINN Trademark without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for COMWINN Products. Furthermore, upon information and belief, Defendants also use additional unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine COMWINN Products. Some Defendants only show the COMWINN Trademark in product images, while using strategic item titles and descriptions that will trigger their listings when consumers are searching for COMWINN Products.

17. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. For example, many of Defendant's names and physical addresses used to register the online account are incomplete or virtual. On information and belief, Defendants regularly create new websites or online marketplace accounts on various platforms using the identities listed in Amended Schedule A to this Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

18. Even though Defendants operate under multiple fictitious names,

there are numerous similarities among the Defendant Internet Stores. For example, Many Defendants' websites or product pages have virtually identical layouts with brand name COMWINN in the description of the product, even though different aliases or user names were used to register the respective online stores, suggesting that the Counterfeiting COMWINN Products were manufactured by and come from a common source and that Defendants are interrelated. In addition, Counterfeit COMWINN Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, including using meta data, illegitimate SEO tactics, HTML user-defined variables, and the use of the same text and images, with content copied from Jinghe's official Amazon Store. Further, counterfeiters such as Defendants typically operate several credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Jinghe's enforcement efforts.

19. Defendants, without any authorization or license from Jinghe, have knowingly and willfully used and continue to use the COMWINN Trademark in connection with the advertisement, promotion, distribution, offering for sale, and sale of Counterfeit COMWINN Products into the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit COMWINN Products into the United States, including Illinois.

20. Defendants' use of the COMWINN Trademark in connection with the advertising, distribution, promotion, offering for sale, and sale of Counterfeit COMWINN Products, including the sale of Counterfeit COMWINN Products into the United States,

9

including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Jinghe.

## COUNT I

**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. §1114)**

21. Jinghe hereby re-alleges and incorporates by reference the allegations set forth in paragraph 1 through 20.

22. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered COMWINN Trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The COMWINN Trademark is highly distinctive mark. Consumers have come to expect the highest quality from COMWINN Products offered, sold or marketed under the COMWINN Trademark.

23. Defendants have sold, offered to sell, marketed, distributed and advertised, and are still selling, offering to sell, marketing, distributing and advertising products using counterfeit reproductions of the COMWINN Trademark without Jinghe's permission.

24. COMWINN is the exclusive owner of the COMWINN Trademark. Jinghe's United States Registrations for the COMWINN Trademark (Ex. 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Jinghe's rights in the COMWINN Trademark, and are willfully infringing and intentionally using counterfeit of the COMWINN Trademark. Defendants' willful, intentional and unauthorized use of the COMWINN Trademark is likely to cause and is causing confusion, mistake, and deception as to

the origin and quality of the Counterfeit COMWINN Products among the general public.

25. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

26. Jinghe has no adequate remedy at law, and if Defendants' actions are not enjoined, Jinghe will continue to suffer irreparable harm to its reputation and the goodwill of its well-known COMWINN Trademark.

27. The injuries and damages sustained by Jinghe have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit COMWINN Products.

## COUNT II

## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

28. Jinghe hereby re-alleges and incorporates by reference the allegations set forth in paragraph 1 through 27.

29. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit COMWINN Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Jinghe or the origin, sponsorship, or approval of Defendants' Counterfeit COMWINN Products by Jinghe.

30. By using the COMWINN Trademark on the Counterfeit COMWINN Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit COMWINN Products.

11

31. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit COMWINN Product to the general public involves the use of Counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

32. Jinghe has no adequate remedy at law and, if Defendants' actions are not enjoined, Jinghe will continue to suffer irreparable harm to its reputation and the goodwill of its COMWINN brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510, *et seq.*)

33. Jinghe hereby re-alleges and incorporates by reference the allegations set forth in paragraph 1 though 32.

34. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit COMWINN Products as those of Jinghe; causing likelihood of confusion and/or misunderstanding as to the source of their goods; causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine COMWINN Products; representing that their Counterfeit COMWINN Products have Jinghe's approval when they do not; and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

35. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq.*

36. Jinghe has no adequate remedy at law, and Defendants' conduct has

caused Jinghe to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Jinghe will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

**WHEREFORE,** Jinghe prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the COMWINN Trademark or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine COMWINN Product or is not authorized by Jinghe to be sold in connection with the COMWINN Trademark;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine COMWINN Product or any other product produced by Jinghe, that is not Jinghe's or not produced under the authorization, control, or supervision of Jinghe and approved by Jinghe for sale under COMWINN Trademark;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit COMWINN Products are those sold under the authorization, control or supervision of Jinghe, or are sponsored by, approved by, or otherwise connected with Jinghe;

   d. further infringing the COMWINN Trademark and damaging Jinghe's goodwill; and

Case: 1:18-cv-05031 Document #: 12 Filed: 07/31/18 Page 14 of 15 PageID #:46

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Jinghe, nor authorized by Jinghe to be sold or offered for sale, and which bear any of Jinghe's trademarks, including COMWINN Trademark, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Jinghe's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, sponsored search engine or AdWord providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

   a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using COMWINN Trademark;

   b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the COMWINN Trademark; and

   c. take all steps necessary to prevent links to the Defendants Marketplace Stores' Domain Names identified on Amended Schedule A from displaying in search results, including, but not limited to, removing links to those Domain Names from any search index;

3) That Defendants account for and pay to Jinghe all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for

14

infringement of the COMWINN Trademark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Jinghe be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the COMWINN Trademark;

5) That Jinghe be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 31st day of July 2018.           Respectfully submitted,

<u>/s/ Wei Chen</u>
Wei Chen
Bar License Number: IL 6299278
Wei Chen IP LLC
1440 Taylor St #677
Chicago, Illinois 60607
312. 883.3101(phone)
844.269.2799 (fax)
wchen@weichenip.com

*Counsel for Plaintiff Shenzhen Jinghe Technology Co. Ltd.*