## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SHENZHEN JINGHE TECHNOLOGY CO., LTD. | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-5031 |
| | ) | |
| v. | ) | Judge: Hon. Sara L. Ellis |
| | ) | |
| DOES 1-166 | ) | Magistrate: Hon. Maria Valdez |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF PLANTIFFS' *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, EXPEDIATED DISCOVERY AND SERVICE OF PROCESS VIA EMAIL AND/OR ELECTRONIC PUBLICATION

Plaintiff Shenzhen Jinghe Technology Co., Ltd. ("Jinghe" or "Plaintiff) submit this

Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order

("TRO"), including a temporary injunction, a temporary asset restraint, expedited discovery and

service of process via email and/or electronic publication. (the "*Ex Parte* Motion").

## TABLE OF CONTENTS

I.    INTRODUCTION AND ABSTRACT OF ARGUMENT……………………………......1

II.   STATEMENT OF FACTS……………………………….........................................2

    A.  Jinghe's Trademark and Products……………………………………………………2

    B.  Defendants' Unlawful Activities…………………………………………………......2

III.  ARGUMENT……………………………………………………………………………..3

    A.  Standard for Temporary Restraining Order and Preliminary Injunction….…………….5

    B.  Jinghe Will Likely Succeed on the Merits of the Trademark Infringement and
        Counterfeiting, False Designation of Origin, and UDTPA Claims……………………..5

    C.  There Is No Adequate Remedy at Law, and Jinghe Will Suffer Irreparable Harm and
        loss Absent Preliminary Relief…………………………………………………………8

    D.  The Balancing of Harms Tips in Jinghe's Favor, and the Public Interest Is Served by
        Entry of the Injunction…………………………………………………………………9

IV.  THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE………………………………10

    A.  A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and
        Unlawful Use of Jinghe's Mark is Appropriate………………………………………..11

    B.  Preventing the Fraudulent Transfer of Assets Is Appropriate…………………………11

    C.  Jinghe Is Entitled to Expedited Discovery……………………………………………12

    D.  Service of Process by Email Is Warranted and Appropriate in This Case…………….13

V.   A BOND SHOULD SECURE THE INJUNCTIVE RELIEF………………….................17

VI.  CONCLUSION………………………………………………………………….…...…17

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Columbia Pictures Indus., Inc. v. Jasso,*
    927 F. Supp. 1075, 1077 (N.D. Ill. 1996)……………………………………………...............4

*Christian Dior Couture, S.A. v. Lei Liu, et al.,*
    2015 U.S. Dist. LEXIS 158225, at \*6 (N.D. Ill. Nov. 17, 2015)……………………………4

*Crawford & Co. Med. Ben. Trust v. Repp et al.,*
    No. 11 C 50155, 2011 WL 2531844, at \*1 (N.D. Ill. June 24, 2011)……………..…………..5

*Ty. Inc. v. The Jones Group, Inc.,*
    237 F. 3d 891, 895 (7th Cir. 2001)……………………………........... ……………………5, 9

*Barbecue Marx, Inc. v. 551 Ogden, Inc.,*
    235 F. 3d 1041, 1043 (7th Cir. 2000)……………………………………………...........……5

*Microsoft Corp. v. Rechanik,*
    249 F. App'x 476, 479 (7th Cir. 2007)……………………………...........…………………...6

*AutoZone, Inc. v. Strick,*
    543 F.3d 923, 929 (7th Cir. 2008)……………........……………………………………6

*KJ Korea, Inc. v. Health Korea, Inc.,*
    66 F. Supp. 3d 1005, 1018. (N.D. Ill., 2014)……………………..……………………6

*CAE, Inc. v. Clean Air Eng'g, Inc.,*
    267 F.3d 660, 685 (7th Cir. 2001)……………………………………...……………...7

*Packaging Supplies, Inc. v. Harley-Davidson, Inc.,*
    No. 08 C 400, 2011 WL 1811446, at \*5 (N.D. Ill. May 12, 2011)……………………..…....7

*Re/Max N. Cent., Inc. v. Cook,*
    272 F.3d 424, 432 (7th Cir. 2001)………...……………………………………..8

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.,*
    560 F.2d 1325, 1333 (7th Cir. 1977)…………………………..……………………8

*International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,*
    846 F.2d 1079, 1091 (7th Cir., 1988)…………………………………........……………8

*Processed Plastic Co. v. Warner Communications,*
    675 F.2d 852, 858 (7th Cir. 1982)………………............…………………………….8

*Ideal Indus., Inc. v. Gardner Bender, Inc.,*
    612 F.2d 1018, 1026 (7th Cir. 1979)…………………………......……………………..8

*Promatek Industries, Ltd. v. Equitrac Corp.,*
    300 F.3d 808, 813 (7th Cir. 2002)…………………………......………………….……9

*Krause Int'l Inc. v. Reed Elsevier, Inc.,*
    866 F. Supp. 585, 587-88 (D.D.C. 1994)……………………………………......……….9

*Burger King Corp. v. Majeed,*
    805 F. Supp. 994, 1006 (S.D. Fla. 1992)………………………………......………….9

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,*
    925 F. Supp. 473, 478 (D.D.C. 1996)…………………………………….......…...9, 10

*Eli Lilly & Co. v. Natural Answers, Inc.,*
    233 F.3d 456, 469 (7th Cir. 2000)…………………………………………………10

*Performance Health Systems, LLC. v. The Partnerships, et al.,*
    No. 16-cv-7853 (N.D. Ill. Aug. 10, 2016) (unpublished)………………………………..11

*Animale Grp. Inc. v. Sunny's Perfume Inc.,*
    256 F. App'x 707, 709 (5th Cir. 2007)………………………………...……………….12

*CSC Holdings, Inc. v. Redisi,*
    309 F.3d 988, 996 (7th Cir. 2002)……………………………………………….…….12

*Vance v. Rumsfeld,*
    No. 1:06-cv-06964, 2007 WL 4557812 *6 (N.D. Ill. Dec. 21, 2007)………………………13

*Rio Props., Inc. v. Rio Int'l Interlink,*
    284 F.3d 1007, 1014 (9th Cir. 2002)…………………………………………….....14, 15

*MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.,*
    No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008)………………………15

*Popular Enters., LLC v. Webcom Media Group, Inc.,*
    225 F.R.D. 560, 563 (E.D. Tenn. 2004)……………………………………….....15, 16

*Juniper Networks, Inc. v. Bahattab*,
    No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008)……………15

*In re Potash Antitrust Litig.*,
    667 F. Supp. 2d 907, 930 (N.D. Ill. 2009)………………………………………………16

*In re LDK Solar Secs. Litig.*,
    2008 WL 2415186, *2 (N.D. Cal. Jun. 12, 2008)………………………………………..16

*Nanya Tech. Corp. v. Fujitsu Ltd.*,
    No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26, 2007)……………..……..16

*Rathmann Group v. Tanenbaum*,
    889 F.2d 787 (8th Cir., 1989)………………………………………………………………17

## **Statutes**

Fed. R. Civ. P. 65(b)(1)(A)………………………………...…………………………………3

15 U.S.C. §1051……………………………………………………………….………4

28 U.S.C. §§ 1338(a)-(b)………………………………………………………………4

28 U.S.C. § 1331………………………………………………………………………4

28 U.S.C. § 1367(a)……………………………………………………………………4

15 U.S.C. § 1114(1)……………………………………………………………………5

15 U.S.C. § 1125(a)…………………………………………………………………5, 8

15 U.S.C. § 1057(b)……………………………………………………………………6

15 U.S.C. § 1116(a)………………………………………………………….......11

15 U.S.C. §1117(a)(1)………………………………………………………………...12

Fed. R. Civ. P. 26(b)(2)………………………………………………………………13

Fed. R. Civ. P. 4(f)(3)………………………………………………………13,14,15,16

## MEMORANDUM OF LAW

### I.  INTRODUCTION AND ABSTRACT OF ARGUMENT

Plaintiff Shenzhen Jinghe Technology Co. Ltd. ("Jinghe") is requesting temporary *ex parte* relief based on an action for the claims of trademark infringement and counterfeiting, false designation of origin, and violation of the Illinois Uniform Deceptive Trade Practice Act (the "UDTPA") against the defendants identified on Schedule "A" to the Complaint ("Defendants"). To reiterate the facts in Jinghe's complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling Counterfeit LED Lighting Products of Jinghe's registered trademark COMWINN (the "Counterfeit COMWINN Products) via fully interactive, commercial Internet stores in Schedule A to the Complaint (the "Defendant Internet Stores").

Defendants trade upon Jinghe's reputation and goodwill by selling and/or offering for sale unauthorized/unlicensed COMWINN Counterfeit Products targeting the United States including Illinois. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them. Defendants go to great lengths to conceal their identities and the full scope and interworking of their counterfeiting operation. Furthermore, Defendants make their Counterfeit Product Page appear to be authorized by Jinghe and adopt illegitimate internet tactics to cheat unknowing consumers. Jinghe is forced to file the action to combat Defendants' counterfeiting activities and protect unknowing consumers from purchasing Counterfeit COMWINN Products from the Defendant Internet Stores. Defendants' ongoing unlawful infringements and counterfeiting activities would not stop until being restrained immediately to avoid further harm

1

to consumers and Jinghe. Accordingly, Jinghe respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

## II.     STATEMENT OF FACTS

### A.   **Jinghe's Trademark and Products**

Jinghe is a vibrant e-commerce business excelled in innovative technologies and product designs with streamlined process of production and service, thriving internationally for its extraordinary online success shortly upon its launch on August 25, 2015. Jinghe's COMWINN Products bring daily life convenience to international consumers, especially customers in the United States and United Kingdom. Declaration of Congqi Zhang, the "Zhang Declaration," at ¶ 4. Jinghe has expended tremendous time, money, energy, labor and other various resources in designing, developing, advertising to promote the COMWINN trademark. *Id.* at ¶ 7. COMWINN Products have won the BEST SELLER and Amazon's choice symbol, achieving the status of the top brand across the whole sites of Amazon for LED lights and lamps of the same type. *Id.* at ¶ 8. Products bearing the COMWINN Trademark are widely recognized and exclusively associated by consumers, the public and the trade as top-quality products in LED Lighting Products sourced from Jinghe. COMWINN Products have also become among the most popular of their kind on other marketplaces. *Id.*

### B.   **Defendants' Unlawful Activities**

The success of COMWINN brand has resulted in its relentless counterfeiting. *Id.* at ¶ 9. Jinghe has spent all efforts to curb the infringements by regularly investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by

consumers. Jinghe has urged online marketplaces to restrict infringing sellers from selling Counterfeit COMWINN Products if the marketplaces are cooperative. Jinghe also tried to reach infringers directly if the online marketplaces did not respond or fail to resolve the problem. *Id.* However, Defendants are evasive and hard to reach and have persisted in selling counterfeit COMWINN products. *Id.* The similarities of Defendants Internet Stores lie in similar descriptions of the Counterfeit COMWINN Products as well as common website traffic tactics used to pretend to be authorized COMWINN seller. *Id.* at ¶ ¶ 10-11. This pattern of infringement strongly suggests that Defendants are an interrelated group of counterfeiters. Jinghe will take appropriate steps to amend the Complaint if Defendants disclose additional credible information of their identities.

### III.    ARGUMENT

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b)(1)(A). In instant case, Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm, loss or damage to Jinghe's goodwill and reputation signified by the COMWINN Trademark. The entry of a TRO is appropriate because it would immediately stop the Defendants from unduly benefiting from their infringing use of the COMWINN Trademark and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely modify registration data and content, change accounts, redirect traffic to other websites in their control, and move any assets from U.S. based bank accounts, including PayPal accounts. Declaration of Wei Chen (the "Chen Declaration") at ¶ 3. Courts have repeatedly recognized that civil actions against

counterfeiters on the internet present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). Jinghe respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction pursuant to the provisions of the Lanham Act, 15 U.S.C. §1051, et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331; and this Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) as the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

This Court has personal jurisdiction over Defendants. Defendants in this action directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by offering to sell or sell the products to Illinois residents using counterfeit versions of the COMWINN Trademark, providing shipments of Counterfeit COMWINN Products and accepting orders and payments for Counterfeit COMWINN Products from Illinois residents. *See* Complaint at ¶12. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu, et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendants offering to sell alleged infringing product to the United States residents, including Illinois; no actual sale required). Each Defendant is. committing tortious acts in Illinois and is engaging in interstate commerce, and has wrongfully caused Jinghe substantial injury in the State of Illinois.

#### A. Standard for Temporary Restraining Order and Preliminary Injunction

The District Courts within this Circuit hold that the standard to issue a TRO is the same as that required to issue a preliminary injunction. *See Crawford & Co. Med. Ben. Trust v. Repp et al.,* No. 11 C 50155, 2011 WL 2531844, at *1 (N.D. Ill. June 24, 2011). A likelihood of success on the merits, irreparable harm absent injunctive relief and no adequate remedy at law are the three elements to obtain a preliminary injunction. This Court also balances the harm that party will suffer against the harm the other party will suffer as well as considering the public interest. *See Ty. Inc. v. The Jones Group, Inc.*, 237 F. 3d 891, 895 (7th Cir. 2001).

The balancing process of harm is weighed by what the Court has deemed "the sliding scale approach"-the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.* This sliding scale approach is an intuitively weighing relevant consideration and is equitable in judicial sense. *Id.*

#### B. Jinghe Will Likely Succeed on the Merits of Its Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims

Under the Lanham Act, if a defendant reproduces, copies, or makes colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods…in commerce without the consent of the registrant, which such use is likely to cause confusion or cause mistake or deceive, the defendant is liable for trademark infringement and counterfeiting. 15 U.S.C. § 1114(1).

Pursuant to 15 U.S.C. § 1125(a), a Lanham Act trademark infringement claim contains two elements. First, a protectable mark under the Lanham Act. Second, the likelihood of confusion among consumers. *Barbecue Marx, Inc. v. 551 Ogden, Inc.,* 235 F. 3d 1041, 1043 (7th Cir. 2000). In instant case, the COMWINN Trademark is registered with the United States Patent

and Trademark Office and is inherently distinctive. Zhang Declaration at ¶ 5. The registration for the COMWINN Trademark is valid, subsisting, in full force and effect. *Id.* The registration for the COMWINN Trademark is prima facie evidence of its validity and exclusive right of Jinghe to use the COMWINN Trademark under 15 U.S.C. § 1057(b). Jinghe has never licensed or authorized Defendants to use the COMWINN Trademark. *Id.* at ¶ 6. Jinehe satisfies the first element of its Lanham Act claim. Second, the likelihood of confusion among consumers is presumed according to the holding of the Seventh Circuit that if "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). This Court can presume a likelihood of confusion from Defendant's use of the COMWINN Trademark. Applying the Seventh Circuit's seven factors to determine the likelihood of confusion renders the same result. The seven factors analysis is a totality test as none of them is dispositive: 1) similarity between the marks in appearance and suggestion; 2) similarity of the products; 3) area and manner of concurrent use; 4) degree of care likely to be exercised by consumers; 5) strength of complainant's mark; 6) actual confusion; and 7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). The crux is whether the parties' use of those marks will confuse consumers as to the source of goods and services. *See KJ Korea, Inc. v. Health Korea, Inc.,* 66 F. Supp. 3d 1005, 1018. (N.D. Ill., 2014).

1. In this case, the extensive documentation submitted by Jinghe clearly shows that Defendants sell Counterfeit COMWINN Products that look identical or similar with Jinghe's

Genuine COMWINN Products. Zhang Declaration at ¶ 10. Most Defendants copy Jinghe's COMWINN Products' pictures for their own listing of goods. Defendants use the counterfeit marks identical to the COMWINN Trademark and list Counterfeit COMWINN Products in similar categories of lamps and lightings where COMWINN's current and potential customers look for Genuine COMWINN Products. *Id.* The goods labeled with the identical mark COMWINN from Defendants' Online Stores make consumers confused as to the source of the goods. *Id.* COMWINN gained the bestseller on Amazon. *Id.* at ¶ 8. Defendants put "COMWINN" brand in product descriptions. *Id.* at ¶ 10. The intent of the defendants to palm off their products as that of another is evident when they cheat consumers by showing reckless disregard to the rights of trademark owner of COMWINN. Defendants also use website traffic tactics and online promotional tools to promote counterfeit goods of COMWINN and divert customers who seek for Genuine COMWINN Products to their own internet stores. *Id.* at ¶ 11. It further proves Defendants' intent to confuse the source of COMWINN Products and deceive consumers who intend to buy genuine COMWINN Products. Defendants make consumer's exercise of care beyond control.

Evidence of consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine COMWINN Products. *CAE, Inc. v. Clean Air Eng'g, Inc.,* 267 F.3d 660, 685 (7th Cir. 2001). Jinghe is likely to establish a *prima facie* case of trademark infringement and counterfeiting, false designation of origin and violation of the UDPA because these claims involve the same elements. *See Packaging Supplies, Inc. v. Harley-Davidson, Inc.,* No. 08 C

400, 2011 WL 1811446, at *5 (N.D. Ill.   May 12, 2011). *Also See* 15 U.S.C. § 1125(a).

### C. There Is No Adequate Remedy at Law, and Jinghe Will Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc*., 233 F.3d 456, 469 (7th Cir. 2000)). The Seventh Circuit recognizes that irreparable injury almost inevitably follows because damages may not be fully compensable due to the difficulty for an injured plaintiff to determine and defendants' incapability to compensate due to the poor quality or management of the products defendants sold. To Plaintiff, it also means the permanent loss of its customers because the confusion causes purchasers to refrain from buying plaintiff's product and turn to plaintiff's competitors. *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1333 (7th Cir. 1977).   "[t]he owner of a mark is damaged by a later use of a similar mark which place[s] the owner's reputation beyond its control, though no loss in business is shown." James Burrough, Ltd., 540 F.2d at 276 (emphasis added)." *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079 (7th Cir., 1988). *See also Processed Plastic Co. v. Warner Communications,* 675 F.2d 852, 858 (7th Cir. 1982) ("[t]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods."). As such, monetary damages are likely to be inadequate compensation for such irreparable harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

8

Jinghe has and continues to suffer irreparable harms and injuries by Defendants'
unauthorized use of the COMWINN Trademark through loss of exclusivity, diminished
goodwill and brand confidence, damage to COMWINN's reputation, and loss of future sales.
Zhang declaration at ¶ 12. The extent of the harm to Jinghe's reputation and goodwill and the
possible diversion of customers due to loss in brand confidence are both irreparable and
incalculable warranting an immediate halt to Defendants' infringing activities through
injunctive relief.   *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir.
2002) (Finding that damage to plaintiff's goodwill has no adequate remedy at law and therefore
it is irreparable). If an *ex part* Temporary Restraining Order is not issued under Federal Rule of
Civil Procedure 65(b)(1), Jinghe will suffer immediate and irreparable injury, harm, loss or
damage. Zhang Declaration at ¶ 13.

### D.  The Balancing of Harms Tips in Jinghe's Favor, and the Public Interest Is Served by Entry of Injunction

This Court must balance the Defendants' harm if relief is granted against irreparable harm
Jinghe will suffer if relief is denied. *Ty. Inc.,* 237 F.3d at 895. For willful infringers, Defendants
are not entitled to equitable consideration. Courts generally favor the trademark owner for
balancing hardships between the parties in infringement cases. *Krause Int'l Inc. v. Reed
Elsevier, Inc.,* 866 F. Supp. 585, 587-88 (D.D.C. 1994).   As explained in Burger's Court, one
who uses the mark of another without authorization or license for similar goods acts at his own
peril because he has no right or claim to the profits or advantages derived thereof. *Burger King
Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992). The balance of harms cannot favor
defendants whose injury result from knowing infringement and unjust enrichment. *Malarkey-*

*Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 925 F. Supp. 473, 478 (D.D.C. 1996).

In instant case, Jinghe has sufficient evidences to show that Defendants sell Counterfeit COMWINN Products and are unjustly enriched by the offering of sale, sale, and advertising of Counterfeit COMWINN Products, taking advantages of COMWINN, a brand sought after by consumers in demand of LED Lights and Lamps. Without prompt intervention of the Court to stop infringing activities, Jinghe suffers loss of revenue and customers in long term. Moreover, it could destruct COMWINN brand because defendants' infringements cause disruptive confusion among consumers. Only temporary restraining order and preliminary injunction order could stop the vicious circle. Thus, the balance of equities tips decisively in Jinghe's favor.

The injury to the public is significant. It is difficult for consumers to distinguish because consumers are being fooled by Defendants to purchase what they do not intend to buy. Furthermore, consumers often got inferior quality of products than what they expected from genuine COMWINN Products and their confidence in genuine COMWINN Products are diminished or even destroyed by Defendants' Counterfeit COMWINN Products. Defendants deprive the public the right to know the source of product. "[t]he public interest is served by [an] injunction because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly v. Natural Answers, Inc*., 233 F.3d 456, 469 (7th Cir. 2000).

The public interest and Jinghe's irreparable harm are sufficient weighty here. Jinghe is therefore seeking for injunctive relief specifically intended to address the instant critical issue and remedy the injury by dispelling the public confusion resulting from Defendants' actions.

## IV.     THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark…" 15 U.S.C. § 1116(a).

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Jinghe's Mark Is Appropriate

Jinghe requests a temporary injunction requiring the Defendants to immediately cease all use of the Jinghe Trademark, or substantially similar mark, on or in connection with all Defendant Internet Stores. Such relief is necessary and the only solution to stop the ongoing harm to COMWINN Trademark and its associated goodwill, as well as to save unknowing consumers from being cheated by Defendants, to prevent Defendants from robbing Jinghe of COMWINN Trademark's goodwill and reputation for unjust enrichment. The need for *ex parte* relief is magnified in nowadays' global economy where counterfeits can operate anonymously over the Internet and become evasive once Defendants sense their illegitimate activities are being detected. Jinghe is not aware of true identities or true locations of Defendants or other Defendant Internet Stores used to distribute Counterfeit COMWINN Products. Courts often authorize immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Performance Health Systems, LLC. v. The Partnerships, et al.,* No. 16-cv-7853 (N.D. Ill. Aug. 10, 2016) (unpublished) (Order granting Ex Parte Motion for Temporary Restraining Order).

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate

Jinghe requests an *ex parte* restraint of Defendants' assets so that Jinghe's right to an equitable accounting of Defendants' profits from sales of Counterfeit COMWINN Products is

not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. Otherwise, Defendants may disregard their responsibilities and move financial assets fraudulently to unreachable accounts or places before a restraint is ordered.

The inherent authority to issue a prejudgment asset restraint is rested in Courts when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.,* 256 F. App'x 707, 709 (5th Cir. 2007). Jinghe has a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim. Jinghe is suffering the immediate irreparable harm caused by Defendants and is entitled to recover defendants' profits and consequent or incidental damages subject to the principles of equity in accordance with the Lanham Act 15 U.S.C. §1117(a)(1).

Absent asset restraining order, once defendants are alerted by legal notice, defendants' ill-gotten funds would soon be moved to the places beyond Jinghe's control. Asset restraining order is appropriate in similar cases to assure the availability of permanent relief. *CSC Holdings, Inc. v. Redisi,* 309 F.3d 988, 996 (7th Cir. 2002)). "[S]ince the assets in question here were profits the Redisis made by unlawfully stealing Cablevision's services, the freeze was appropriate and may remain in place pending final disposition of the case." *Id*. This Court has inherent equitable authority to grant Jinghe's request for a prejudgment asset freeze to preserve relief sought by Jinghe.

### C. Jinghe Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the

merits." *Vance v. Rumsfeld,* No. 1:06-cv-06964, 2007 WL 4557812 *6 (N.D. Ill. Dec. 21, 2007)(quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). It is echoed by Federal Rule of Civil Procedure stating that courts have broad power in permitting discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2). Jinghe respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. This request only includes the essential information to prevent further irreparable harm. It is necessary to discover those financial accounts that can be frozen to ensure the enforcement of trademark owner's right and deter Defendants' further infringing activities. Jinghe's seizure and asset restraint will go awry absent requested relief. Therefore, Jinghe respectfully requests the expedite discovery be granted.

### D. Service of Process by Email Is Warranted and Appropriate in This Case

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Jinghe requests an order allowing service of process by electronically sending the Complaint, this Order, and other relevant documents via Defendant's Webstore registration email, any known or discovered e-mail related to the webstore listed in the Complaint. Plaintiff submits that providing notice via e-mail is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Electronic service is appropriate and necessary in this case because the Defendants, on information and belief: (1) have provided false names and physical addresses in the public contact information to their respective Webstores; and (2) rely primarily on electronic communications to communicate with customers and the host of their internet stores, demonstrating the reliability of

this method of communication by which the Defendant may be apprised of the pendency of this action. Jinghe respectfully submits that an order allowing service of process via e-mail in this case will benefit all parties and the Court by ensuring that the Defendants receive immediate notice of the pendency of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve the Defendants in this manner, Plaintiff will almost certainly be left without the ability to pursue a remedy.

Online Marketplace Account operators accepting PayPal must provide a valid email address to customers for completing payment. Moreover, it is necessary for merchants, who operate entirely online, to visit their internet stores to ensure it is functioning and to communicate with customers electronically regarding issues related to the shipment of products. As such, it is far more likely that Defendants can be served electronically than through traditional service of process methods.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Similarly, a number of Courts, including the Northern District of Illinois, have held that

alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id*. at 1018. *See* also *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*, 284 F.3d at 1018) (allowing e-mail service); *see also Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017-1018; other citations omitted) (holding that "in certain circumstances ... service of process via electronic mail ... is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure"). Plaintiff submits that allowing service e-mail in the present case is appropriate and comports with constitutional notions of due process, particularly given the decision by the Defendants to conduct their illegal Internet-based activities anonymously.

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props. v. Rio Intern. Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002). As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id*. at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id*. Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served.

*Id*. As such, this Court may allow Plaintiff to serve the Defendants via email.

Additionally, Plaintiff is unable to determine the exact physical whereabouts or identities of the Defendants due to their lack of correct contact information on their Webstores. Plaintiff, however, has good cause to suspect the owners of Defendant Internet Stores are from the UK, US, Israel, Thailand, China or other parts of the world. The United States and many other countries are signatories to The Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters (the "Convention"). Nevertheless, United States District Courts, including in this District, have routinely permitted alternative service of process notwithstanding the applicability of The Hague Convention. *See e.g., In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); *see also In re LDK Solar Secs. Litig.*, 2008 WL 2415186, *2 (N.D. Cal. Jun. 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority); *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (recognizing that, while "communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community"). In addition, the law of The Hague Member Countries do not appear to prohibit electronic service of process. As such, Plaintiff respectfully requests this Court's permission to serve Defendants via email or electronic publication.

16

**V.     A BOND SHOULD SECURE THE INJUNCTIVE RELIEF**

No restraining order or preliminary injunction shall issue except upon the giving of

security by the applicant, in such sum as the court deems proper. *Rathmann Group v.*

*Tanenbaum*, 889 F.2d 787 (8th Cir., 1989). Jinghe shows strong and unequivocal evidences of

Counterfeiting, Trademark Infringement, False Designation of Origin, and UDTPA Claims.

Jinghe respectfully request that this Court require Jinghe to post a bond of no more than Ten

Thousand U.S. Dollars ($10,000.00).

**VI.     CONCLUSION**

Without the prompt entry of the requested relief, Defendants will continue to rob Jinghe of

the goodwill and reputation of Jinghe's federally registered trademark COMWINN and impair

Jinghe's hard-earned consumer confidence in COMWINN Products; Jinghe will continue to

suffer irreparable harm through Defendants' unfair competition and fraud in business that harms

or destroys COMWINN brand; the public will continue to be deceived as to the source of goods

and be induced to pay for things the public do not intend to buy. Entry of an ex parte order is

imminent and necessary. Based on the forgoing and consistent with similar case decided by this

Court, Jinghe respectfully requests that this Court enter a Temporary Restraining Order in the

form submitted herewith.

Dated this 31st day of July 2018.          Respectfully submitted,

                                           /s/ Wei Chen
                                           Wei Chen
                                           Bar License Number: IL 6299278
                                           Wei Chen IP LLC
                                           1440 Taylor St #677
                                           Chicago, Illinois 60607

312.883.3101 (phone)
844.269.2799 (fax)
wchen@weichenip.com

*Counsel for Plaintiff Shenzhen Jinghe Technology Co. Ltd.*